Affirmed and Memorandum Opinion filed November 10, 2009.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-08-00345-CR

___________________

 

Robert Martinez, Appellant

 

V.

 

The State of Texas, Appellee



 



 

On
Appeal from the 174th District Court

Harris County,
Texas



Trial Court Cause No. 1119772

 



 

 

M E M O R A N D U M   O P I N I O N

A jury found appellant, Robert Martinez, guilty of
aggravated robbery and assessed appellant’s punishment at twenty years’
confinement in the Texas Department of Criminal Justice, Institutional
Division.  See Tex. Penal Code Ann. § 29.03(a)(2) (Vernon 2003).  In
five issues, appellant challenges (1) the legal and factual sufficiency of the
evidence, (2) the trial court’s denial of appellant’s motion for an instructed
verdict, (3) whether he received effective assistance of counsel, (4) the trial
court’s decision to overrule appellant’s hearsay objection, and (5) improper
statements made by the State during closing argument.  We affirm.  

Factual and Procedural
Background 

I.         Complainant’s
Story

            On April 24, 2007,
the complainant was performing community service at a community center for
children and the elderly.  The complainant was working at the center because of
a traffic ticket he received.  At approximately two in the afternoon, when the
complainant was leaving for the day, an elderly female asked him for a ride
home.  The complainant agreed and the female directed him to her home because
he was unfamiliar with that part of town.  The complainant dropped the female
off and began his trip home.  When he stopped at a stop sign to exit her
neighborhood, he was approached by appellant who asked the complainant if he
could give appellant a ride to the Metro station down the street.  The
complainant agreed and appellant got into the complainant’s vehicle.  Once they
reached the Metro station, appellant asked the complainant if he could instead
give him a ride to appellant’s friend’s house down the street.  The complainant
drove appellant to a house that appellant claimed was his friend’s house.  When
they were stopped outside the house, appellant pulled out a gun and stuck it in
the complainant’s side and said “give me all you have.”  The complainant
testified the gun was a black revolver with a brown grip.  The complainant gave
appellant all the cash he had in his wallet—thirty-five dollars.  Appellant
then snatched the complainant’s wallet out of his hand.  Next, appellant got
out of the vehicle, continuing to point the gun at the complainant and demanded
the complainant get into the passenger seat while appellant got into the
driver’s seat.  

            Appellant drove
complainant’s vehicle to a nearby gas station.  Once they reached the gas
station appellant demanded they get out of the vehicle and go to the ATM
machine inside the gas station.  Appellant held a gun to the complainant’s side
as they walked to the ATM machine in the gas station.  The complainant testified
there were two clerks and one customer inside the store when they entered. 
Eventually, the complainant withdrew eighty dollars from one of his accounts. 
After withdrawing the money, the complainant demanded his keys back from
appellant in exchange for the eighty dollars.  The complainant testified he was
yelling and trying to get the clerk’s attention.  Appellant and the complainant
then went to the front of the store and appellant asked the complainant if he
would like anything to drink.  The complainant said he would like a Sprite;
appellant went to retrieve the Sprite.  While appellant was getting the Sprite,
the complainant tried to signal to the clerk that he needed the clerk to call
9-1-1.  The clerk did not make the call.  Appellant returned and purchased the
Sprite with the complainant’s money.  Next, appellant tried to get the
complainant to leave the store with him, but the complainant refused. 
Eventually, appellant left the store alone in the complainant’s vehicle.  The
complainant called the police on his cellular phone and they arrived at the gas
station shortly thereafter.  The police attempted to take the complainant back
to the house where the complainant picked up appellant, but the complainant
testified the police were not following his directions and were unable to
locate the house.  The complainant was dropped off back at the gas station
where a family member picked him up.  Police officers testified they never
recovered a surveillance video from the gas station.  

II.        Appellant’s
Story

            On April 24, 2007,
appellant testified he left his house early in the morning to go to work.  When
he left his house, he was carrying approximately six hundred dollars in cash
for his rent and other bills.  He finished work around noon and went to his mother’s
house.  Many of his family members were at his mother’s house.  Everyone was
outside in the front yard, talking and working on a vehicle.  Eventually, a red
vehicle began circling the house.  After the vehicle had circled the house
three or four times, appellant flagged the vehicle down to determine what it
was doing.  Complainant was driving the vehicle and apparently asked appellant
whether appellant could procure drugs for him.  Appellant said he knew where to
find drugs and that he would help the complainant.  Appellant got in the
passenger seat of the complainant’s vehicle and they drove to the gas station. 
Appellant testified they went to the gas station because it was near the
apartment complex where appellant could buy drugs and he wanted to drop the
complainant off.  He explained he did not want the complainant coming with him
to buy the drugs.  Appellant testified the complainant voluntarily agreed that
appellant would take the complainant’s vehicle to the apartment complex to buy
drugs.  Appellant testified they never entered the gas station nor went to an
ATM machine.

            Appellant drove to
the apartment complex where he believed he could buy drugs for the
complainant.  When he arrived at the apartment complex, he ran into a girl who
led him to an apartment.  When he got inside the apartment, he sat on a couch
and waited for her to come back with the drugs.  She never returned and the
next thing he knew he was being jumped and robbed by three or four
individuals.  Appellant lost consciousness and suffered serious injuries
requiring reconstructive surgery.  When appellant regained consciousness, he
called his mother and then saw police standing outside of the apartment.  He
spoke with the police and relayed to them what happened.  An ambulance was
called and it transported appellant to the hospital.  Appellant denied ever
carrying a gun or threatening the complainant.  

III.      Police Testimony    

            Officer T. Dougherty of the Houston Police Department
testified that on April 24, 2007, he received a dispatch about a possible
prowler at an apartment complex in his patrol area.  When he arrived at the
apartment complex, he observed appellant walking down from an apartment covered
in blood.  The reportee identified appellant as the prowler.  Appellant told
Officer Dougherty that he had just been beat up in the apartment upstairs. 
Officer Dougherty was not aware of the robbery recently reported by the complainant
at the time he spoke with appellant.  After the ambulance left with appellant,
Officer Dougherty searched the apartment for appellant’s attackers.  Officer
Dougherty did not find anyone in the apartment nor any weapons.       

            Officer James Rachel of the Houston Police Department
testified he conducts follow-up investigations on reported incidents and that
he was assigned to the robbery incident reported by complainant.  Officer
Rachel visited the gas station where the complainant was allegedly robbed and
then visited the apartment complex where the complainant’s vehicle was
recovered.  Officer Rachel previously received a supplemental incident report
informing him that the stolen vehicle had been recovered at an apartment
complex.  At this time Officer Rachel was unaware of the assault incident
involving appellant that had taken place at the same apartment complex.  After
speaking with the apartment manager regarding the vehicle found at the complex,
he was informed about the assault incident involving appellant.  Officer Rachel
obtained a copy of the incident report involving appellant and subsequently
developed appellant as a possible suspect in the complainant’s robbery
incident.  Officer Rachel told the jury that he compiled a photospread using a
jail booking photo of appellant.  Another police officer showed the photospread
to the complainant and the complainant immediately identified appellant as the
person who robbed him.  

      Appellant
was arrested and charged with aggravated robbery.  A jury found appellant
guilty of the felony offense of aggravated robbery and assessed punishment at
twenty years’ confinement.  See Tex. Penal Code Ann. §
29.03(a)(2) (Vernon 2003).  This appeal followed.    

Discussion

I.         Factual
and Legal Sufficiency

            In his first issue, appellant contends the evidence is
factually and legally insufficient to sustain his conviction.  In his second
issue, appellant contends the trial court erred by denying his motion for an
instructed verdict, asserting the evidence was insufficient to convict
appellant as charged in the indictment.  We construe appellant’s first and
second issues together because the law is well settled that a challenge to the
denial of a motion for an instructed verdict is a challenge to the legal
sufficiency of the evidence.  Gabriel v. State, 290 S.W.3d 426, 435
(Tex. App.—Houston [14th Dist.] 2009, no pet.).  Appellant’s primary contention
is the evidence is both legally and factually insufficient to support his
conviction for aggravated robbery because there is insufficient evidence
appellant used a deadly weapon, namely a firearm.   

            A.        Standard
of Review   

            When reviewing
legal sufficiency, we view all the evidence in the light most favorable to the verdict
and then determine whether a rational juror could have found the essential
elements of the crime beyond a reasonable doubt.  Hooper v. State, 214
S.W.3d 9, 13 (Tex. Crim. App. 2007).  The jury, as the trier of fact, is the
sole judge of the credibility of witnesses.  See Moreno v. State, 755
S.W.2d 866, 867 (Tex. Crim. App. 1988).  The jury chooses whether or not to
believe all or part of a witness’s testimony.  See id.  We do not engage
in a second evaluation of the weight and credibility of the evidence, but only
ensure the jury reached a rational decision.  Muniz v. State, 851 S.W.2d
238, 246 (Tex. Crim. App. 1993). 

            In a factual
sufficiency review, we consider all the evidence in a neutral light.  Prible
v. State, 175 S.W.3d 724, 730–31 (Tex. Crim. App. 2005).  The evidence may
be factually insufficient in two ways.  Id. at 731.  First, when
considered by itself, evidence supporting the verdict may be so weak the
verdict is clearly wrong and manifestly unjust.  Id.  Second, where the
evidence both supports and contradicts the verdict, the contrary evidence may
be strong enough that the beyond a reasonable doubt standard could not have
been met.  Id.  In determining whether the evidence is factually
insufficient to support a conviction that is nevertheless supported by legally
sufficient evidence, it is not enough that this court may harbor a subjective
level of reasonable doubt to overturn the conviction.  Watson v. State,
204 S.W.3d 404, 417 (Tex. Crim. App. 2006).  We may not simply substitute our
judgment for the fact finder’s.  Johnson v. State, 23 S.W.3d 1, 12 (Tex.
Crim. App. 2000); Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App.
1997).  Unless the record clearly reveals that a different result is
appropriate, we must defer to the jury’s determination of the weight to be
given the evidence.  Johnson, 23 S.W.3d at 8.  

            B.
       Analysis 

            A person commits the offense of aggravated robbery if,
in the course of committing theft, he (1) intentionally, or knowingly, or
recklessly causes bodily injury to another, or (2) intentionally or knowingly
threatens or places another in fear of imminent bodily injury or death, and (3)
uses or exhibits a deadly weapon.  See Tex. Penal Code Ann. §§
29.02(a)(1)–(2), 29.03(a)(2) (Vernon 2003).  

            Appellant contends the complainant’s testimony
that the weapon used was a “gun” 
 is insufficient to support a finding that a “firearm” was used, as alleged in
the indictment.  Although a person commits the first degree felony of
aggravated robbery if he uses or exhibits a deadly weapon in the commission of
a robbery, when the State alleges a specific component that is descriptive of
the essential elements of the crime, it must prove the specific component as
alleged.  See Cruz v. State, 238 S.W.3d 381, 388 (Tex. App.—Houston [1st
Dist.] 2006, pet. ref’d).  Thus, when the State alleges in an indictment for
aggravated robbery that the deadly weapon used by the defendant was a firearm,
as it did in this case, it is required to prove the use of a firearm beyond a
reasonable doubt.  Id.      

            The complainant testified that when he and
appellant arrived at the location appellant claimed was his friend’s house,
appellant pulled a gun out of his right pocket and stuck it to complainant’s
side and said: “[g]ive me all you have.”  The complainant explained he was not
too familiar with guns, but knew appellant’s gun was a revolver and was black
with a brown grip.  Appellant allegedly demanded that the complainant give him
all of the complainant’s money.  The complainant handed over his money and
appellant grabbed the complainant’s wallet out of his hand.  Next, while still
pointing his gun at the complainant, appellant demanded they switch seats in
the vehicle.  Appellant, still holding the gun, got out of the vehicle and
entered the driver’s side, while the complainant crawled over the center
console into the passenger’s seat.  The complainant testified that he feared
appellant would shoot him if he did not comply with appellant’s demands.

            Appellant then drove the vehicle to a nearby gas
station with an ATM machine inside.  Appellant and complainant walked into the
gas station together, while appellant held the gun pressed against the
complainant’s body.  Appellant ordered the complainant to withdraw money from
the ATM machine inside.  The complainant withdrew eighty dollars from the ATM
machine and then asked appellant if he could have his keys in exchange for the
eighty dollars.  Apparently, they got into an argument and appellant put the
gun back into his pocket.  The complainant testified he did not try to run out
of the store when he had a chance, because he was afraid appellant would shoot
him.  

            The defense presented four witnesses—appellant,
his mother, his wife, and his aunt—who testified they did not see a gun on the
day of the incident, nor had they ever seen appellant with a gun.  Appellant’s
story of the events that took place on April 24, 2007 is drastically different
from the complainant’s story.  Importantly, appellant argues he never had a
gun, never went inside the gas station, and voluntarily was given permission to
take the complainant’s vehicle to conduct a drug transaction on complainant’s
behalf.  

            We recognize that the term “gun” may be a much
broader term than “firearm” when taken out of context, and may include such
nonlethal instruments as BB guns, blow guns, pop guns, and grease guns.  O’Briant
v. State, 556 S.W.2d 333, 335–36 (Tex. Crim. App. 1977).  Courts also have 
recognized, however, that the fact finder may draw reasonable inferences and
make reasonable deductions from the evidence as presented to it within the
context of the crime.  Cruz, 238 S.W.3d at 388.  Absent any specific
indication to the contrary at trial, the jury should be able to make the
reasonable inference from the complainant’s testimony that the “gun” used in
the commission of the crime, was, in fact, a firearm.  Id.  

            Appellant’s threatening the complainant with the
gun in itself suggests that it is a firearm rather than merely a gun of the
non-lethal variety.  See Riddick v. State, 624 S.W.2d 709, 711 (Tex.
Crim. App. 1981); Davis v. State, 180 S.W.3d 277, 286 (Tex.
App.—Texarkana 2005, no pet.).  Additionally, the complainant testified he was
in fear for his life because of the gun.  See Davis, 180 S.W.3d at 286. 
There is nothing in the record to suggest the gun used by appellant was a toy
or anything other than a firearm.  The jury, as the fact-finder, was free to
make reasonable inferences from the context of the crime.  It was reasonable
for the jury to find that the “gun” the complainant testified to, was, in fact,
a firearm.  Moreover, the jury was free to believe or disbelieve any portion of
the witnesses’ testimony.  Bargas v. State, 252 S.W.3d 876, 887 (Tex.
App.—Houston [14th Dist.] 2008, no pet.).  The jury’s choice to believe the
State’s case over the entirely different case presented by the defense was
within its sole province.  See id. 

            From this evidence, the jury could have
concluded, beyond a reasonable doubt, that the gun complainant saw was a
firearm.  Accordingly, the evidence is legally sufficient to show the gun
appellant used was a firearm.

            Appellant points to no contrary evidence
suggesting that the gun used was anything other than a firearm.  Instead, his
only evidence to the contrary disputes the very existence of the gun.  Viewing
the relevant evidence in a neutral light, favoring neither the State nor
appellant, and with appropriate deference to the jury’s credibility
determinations, we conclude that the evidence supporting the jury’s finding
that the gun used was a firearm is not too weak to support the verdict; nor is
the weight of the evidence contrary to the finding so strong that the State
could not have met its burden of proof.  See Cruz, 238 S.W.3d at 389. 
Accordingly, we hold that the evidence is factually sufficient to support the
jury’s finding that the gun appellant used was a firearm.  

            For the above reasons, we overrule appellant’s
first and second issues.  

II.        Ineffective
Assistance of Counsel

            In the issues presented section of his brief,
appellant lists nine different bases for his ineffective assistance claim: (1)
counsel failed to request a pre-trial hearing and failed to obtain rulings on
motions filed prior to trial, (2) counsel failed to object to statements by the
trial court during voir dire that appellant was facing a fifteen to life
sentence rather than a five to life sentence, (3) counsel failed to prepare a
witness to testify, allowing that witness to testify to a conflicting alibi defense,
(4) counsel failed to object to improper impeachment of appellant as to a
non-final theft charge during guilt/innocence, (5) counsel failed to object to
improper impeachment of defense witnesses as to non-final convictions, (6)
counsel failed to object to police officer’s allegedly non-responsive statement
that they obtained a jail booking photo of appellant to put in the photospread,
(7) counsel failed to object to the State’s improper argument that the
complainant had no criminal record where there was no testimony about his
criminal history, (8) counsel erred by advising appellant to stipulate and
plead “true” to a conviction not alleged in an enhancement paragraph during
punishment, and (9) counsel failed to object to the State’s improper punishment
argument to consider parole.  

            A.        Standard
of Review 

            In reviewing claims of ineffective assistance of
counsel, we apply a two-prong test.  See Salinas v. State, 163 S.W.3d
734, 740 (Tex. Crim. App. 2005) (citing Strickland v. Washington, 466
U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984)).  To establish
ineffective assistance of counsel, appellant must prove by a preponderance of
the evidence that (1) his trial counsel’s representation was deficient in that
it fell below that standard of prevailing professional norms, and (2) there is
a reasonable probability that, but for counsel’s deficiency, the result of the
trial would have been different.  Id.  A reasonable probability is a
probability sufficient to undermine confidence in the outcome.  Mallett v.
State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).  

            An accused is
entitled to reasonably effective assistance of counsel.  King v. State,
649 S.W.2d 42, 44 (Tex. Crim. App. 1983).  When evaluating a claim of
ineffective assistance, the appellate court looks to the totality of the
representation and the particular circumstances of each case.  Thompson v.
State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).  There is a strong
presumption that counsel’s actions and decisions were reasonably professional
and were motivated by sound trial strategy.  See Salinas, 163 S.W.3d at
740; Stults v. State, 23 S.W.3d 198, 208 (Tex. App.—Houston [14th Dist.]
2000, pet. ref’d).  To overcome the presumption of reasonably professional
assistance, any allegation of ineffectiveness must be firmly founded in the
record, and the record must affirmatively demonstrate the alleged
ineffectiveness.  Thompson, 9 S.W.3d at 813.  When determining the
validity of an ineffective assistance of counsel claim, any judicial review
must be highly deferential to trial counsel and avoid the deleterious effects
of hindsight.  Ingham v. State, 679 S.W.2d 503, 509 (Tex. Crim. App.
1984).  When the record is silent as to the reasons for counsel’s conduct, as
in this case, a finding that counsel was ineffective would require
impermissible speculation by the appellate court.  Stults, 23 S.W.3d at
208.  Absent specific explanations for counsel’s decisions, a record on direct
appeal will rarely contain sufficient information to evaluate an ineffective
assistance claim.  See Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim.
App. 2002).  

            B.        Analysis


                        1.         Failure
to request, file, and urge pretrial hearings and rulings

            Appellant argues his
counsel was ineffective for failing to request a pretrial hearing and for
failing to obtain rulings on motions filed prior to trial.  There were various
pretrial motions filed, including appellant’s pro se motions to dismiss
indictment for improper grand jury procedures, for production and inspection of
grand jury minutes, for pretrial hearing, for discovery of witnesses, and for
discovery and inspection of evidence.  The record does not reflect that
appellant’s counsel obtained rulings on these motions.  However, appellant has
not shown that any of the motions were meritorious, or that the failure to
obtain rulings on the motions resulted in any harm.  Trial counsel may have
believed the pro se motions had no merit.  Appellant has not met his burden
to show error or harm.  See Wills v. State, 867 S.W.2d 852, 857 (Tex.
App.—Houston [14th Dist.] 1993, writ ref’d) ([i]f failure to file pretrial
motions is not ineffective assistance, it necessarily follows that failing to
obtain a ruling is also not ineffective assistance.”); Huynh v. State,
833 S.W.2d 636, 638 (Tex. App.—Houston [14th Dist.] 1992, no writ) (“[f]ailure
to file pretrial motions, in itself, does not result in ineffective assistance
of counsel.”).  

                        2.         Failure
to object during voir dire

            Appellant claims counsel failed to object to the trial
court’s statements during voir dire that appellant was facing a fifteen-to life-sentence
rather than a five- to life- sentence.  In his summation of the facts,
appellant states: “During voir dire, Judge Godwin told the panel that
[a]ppellant was a second offender, rather than using a ‘hypothetical’ situation
while qualifying the veniremen on punishment.”  This is a false representation
of the facts.  The Judge never went beyond the hypothetical realm; he merely
explained how the minimum punishment increases if the jury chooses to believe a
defendant has been convicted of a previous felony.  He never mentioned or even
implied he was talking about the specific defendant in the case at hand. 
Accordingly, appellant’s attorney had no obligation to object.  Thus, this is
not ineffective representation.

                        3.         Failure
to prepare witnesses

            Appellant contends there is a reasonable probability
that the results would have been different if counsel had conducted an adequate
investigation.  Specifically, he claims if counsel had talked to his witnesses
before they testified, he could have avoided what looked like lies.  The
testimony of appellant’s mother and his wife directly conflicted with the
testimony of his aunt.  Without giving trial counsel an opportunity to explain
his actions, we cannot assume trial counsel had no reasonable trial strategy
when he presented these witnesses, despite their conflicting testimony.  See
Rylander v. State, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). 
Additionally, appellant has not shown that had counsel prepared the witnesses
there is a reasonable probability the result would have been different.  Id. 
We cannot predict what the witnesses would have said on the stand.  Without testimony
from trial counsel, an appellate court must presume counsel had a plausible
reason for his actions.  Mata v. State, 226 S.W.3d 425, 430–32 (Tex.
Crim. App. 2007).    

                        4.         Failure
to object to improper impeachment about a non-final                                           theft
conviction of appellant during guilt/innocence 

            Appellant fails to point out where in the record
appellant was improperly impeached regarding a theft incident.  Moreover, this
issue was not addressed in the body of appellant’s argument.  This issue is
inadequately briefed and therefore will not be considered.  Tex. R. App. P.
38.1(i); Jones v. State, 119 S.W.3d 766, 784 (Tex. Crim. App. 2003).  

                        5.         Failure
to object to improper impeachment of witnesses as to                                           non-final
convictions  

            Appellant fails to address this issue in the body of
his argument.  It is not clear which witness he is referring to.  This point is
inadequately briefed and therefore will not be considered.  Tex. R. App. P.
38.1(i); Jones, 119 S.W.3d at 784.

                        6.         Failure
to object to “jail booking photo” statement

            In the issues presented section appellant complains
counsel was ineffective for failing to object to a police officer’s
“non-responsive statement” that he used a jail booking photo to compile a
photospread.  In the body of the argument, appellant complains counsel was
ineffective for failing to object to the use of the jail booking photo in the
photospread, which was entered into evidence.  As to the latter argument,
counsel did object to the photospread and the trial court held a hearing
outside the jury, ultimately overruling counsel’s objection to the
photospread.  Thus, appellant’s latter argument is groundless.  

            As for counsel’s
failure to object to the police officer’s reference to appellant’s jail booking
photo, appellant has failed to overcome the presumption that trial counsel’s
actions were reasonable.  It is conceivable trial counsel decided not to object
in order to avoid calling attention to the source of the photo.  Without giving
trial counsel an opportunity to explain his decisions, we will not speculate
that he acted without a reasonable trial strategy.  Mata, 226 S.W.3d at
431.  Therefore, appellant has failed to rebut the presumption that trial
counsel’s actions were reasonable.  Id.  

                        7.        Failure
to object to improper bolstering of complainant

            Appellant argues counsel was ineffective for failing
to object to the State’s improper argument that the complainant had no criminal
record, when there was no testimony about his criminal history.  During the
guilt/innocence stage closing arguments the State argued: “[w]ho do you
believe? The convicted felon who is trying to save his own skin, or the college
student with no criminal history at all, who has nothing to gain by coming down
and lying to you?”  

            To be proper, jury
argument must fall within one of the following four categories: (1) summation
of the evidence, (2) reasonable deduction from the evidence, (3) answer to
argument of opposing counsel, and (4) plea for law enforcement.  See Todd v.
State, 598 S.W.2d 286, 296–97 (Tex. Crim. App. 1980).  The general rule is
that in closing argument the State may not bolster the credibility of its
witnesses with unsworn testimony.  Johnson v. State, 987 S.W.2d 79, 84
(Tex. App.—Houston [14th Dist.] 1998, pet. ref’d).  However, if the State’s
argument is a reasonable deduction from, or summation of, the evidence, it is
permissible jury argument.  See id.; Richards v. State, 912
S.W.2d 374, 379 (Tex. App.—Houston [14th Dist.] 1995, writ ref’d).

            In the instant
case, the prosecutor implied the complainant was credible because he had no
criminal history.  Appellant argues this was improper argument because there
was no previous testimony about appellant’s criminal history.  However, during
cross-examination of appellant, defense counsel asked the complainant whether
he had ever been convicted of any kind of drug offense.  The complainant
confirmed that he had not.  Thus, defense counsel placed the complainant’s
criminal history in evidence.  Therefore, the State’s closing argument falls
within the category of summation of the evidence.  See Johnson, 987
S.W.2d at 84.  Because the State’s argument falls within one of the four
permissible categories of proper jury argument, an objection was improper.  Id.
at 85.  Counsel’s performance, therefore, satisfied the first prong of the Strickland
test and no further inquiry is required.  Id.  

                        8.         Advising
appellant to stipulate and plead true to a conviction not                                    alleged
in the enhancement paragraph during punishment

            Appellant contends counsel suggested that appellant
stipulate that he was convicted of a felony, possession of codeine, not stated
in the enhancement paragraph of the indictment.  Appellant voluntarily
stipulated to two previous convictions.  There is nothing in the record
reflecting counsel advised appellant to do so.  Appellant has not overcome the
presumption that trial counsel’s actions were reasonable.  Rylander, 101
S.W.3d at 110.

                        9.         Failure
to object to State’s punishment argument to consider                                           parole


            Appellant fails to
address this issue in the body of his argument.  Appellant has presented no
argument or authority in support of this claim.  Appellant  therefore has failed
to adequately brief this issue and it will not be considered.  Tex. R. App. P.
38.1(i); Jones, 119 S.W.3d at 784. 

            Accordingly,
appellant’s third issue is overruled.

III.      Hearsay Objection

            Appellant argues the trial court erred in
overruling counsel’s hearsay objection to Officer Dougherty’s testimony because
it admitted evidence of an extraneous offense.

            A.        Standard of Review 

            An appellate court reviews a trial court’s
decision to admit or exclude evidence under an abuse of discretion standard.  Burden
v. State, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001).  An abuse of
discretion will be found only when the trial judge’s decision was so clearly
wrong as to lie outside the zone of reasonable disagreement. Cantu v. State,
842 S.W.2d 667, 682 (Tex. Crim. App. 1992).  

            B.        Analysis

                        1.        Extraneous Offense Testimony

            During the State’s case in chief it
presented the testimony of Houston Police Officer T. Dougherty.  Officer
Dougherty became involved in this case when he was called to the apartment
complex where appellant was found after allegedly having been assaulted.  The
complained-of testimony is the following:

            STATE:                                  Now, you
said that the original call was about a prowler                                                         and
once you arrived you found he [appellant]                                                                                     was
a victim of assault.  Were you ever able to confirm                                                         he
was, indeed, the prowler that was called on?

           OFFICER:                              Yes. 
According to reportee, she did say –

            DEFENSE COUNSEL:         I object to hearsay
according to what the reportee said.

            THE COURT:                        That will be
overruled.  He may answer, again, not for                                                           the
truth of it, but just to show the context of what he                                                              was
doing and what information he had.  You may                                                                 answer
the question.

            OFFICER:                              When I
spoke to the reportee, she had said he was in                                                               her
house or her apartment.  She had left, came back,                                                                         and
he was there.  She did not know who he was.

 

            Appellant argues the trial court erred by
allowing “backdoor hearsay” testimony of an extraneous offense by artful
questioning by the prosecutor.  During trial, appellant’s objection to this
testimony was based on hearsay.  On appeal, appellant argues the testimony was
inadmissible because it constitutes extraneous offense evidence.  To preserve a
complaint for appellate review, a party must make timely, specific objections
in the trial court.  Tex. R. App. P. 33.1.  The objection must state the
grounds for the ruling that the complaining party sought with sufficient
specificity to make the trial court aware of the complaint, unless the specific
grounds are apparent from the context.  Id.  The complaining party must
obtain an adverse ruling from the trial court.  Turner v. State, 805
S.W.2d 423, 431 (Tex. Crim. App. 1991).  The point of error on appeal must
correspond to the objection made at trial.  Id.  Where an objection does
not comport with the complaint on appeal, the appellant does not preserve any
error.  Barley v. State, 906 S.W.2d 27, 37 (Tex. Crim. App. 1995). 
Appellant did not properly preserve an objection on the basis of extraneous
offense testimony and has waived this argument on appeal.  See id. 

                        2.         Hearsay

            Additionally, appellant argues the trial court
erred by failing to sustain the objection as to hearsay.  Officer Dougherty
received a dispatch reporting an intruder at an apartment complex.  When
Officer Dougherty arrived at the scene, appellant was identified as the
possible suspect; however, appellant claimed to have been assaulted and an
ambulance transported him to the hospital.  Appellant contends the testimony by
Officer Dougherty relaying the reportee’s identification of appellant as the prowler
is inadmissible hearsay.  The trial court admitted the testimony over
appellant’s objection because it found the statements were not being offered to
prove the truth of the matter asserted.  

            A police officer’s testimony is not hearsay when
it is offered for the purpose of explaining how a defendant became a suspect
rather than for the truth of the matter asserted.  See Dickins v. State,
894 S.W.2d 330, 347 (Tex. Crim. App. 1995).  Furthermore, an officer’s
testimony is not hearsay when it is admitted, not for the truth, but to
establish the course of events and circumstances leading to the defendant’s
arrest.  Thorton v. State, 994 S.W.2d 845, 854 (Tex. App.—Fort Worth
1999, pet. ref’d).  Such testimony may assist the jury’s understanding of
events by providing context for the police officer’s actions.  Davis v.
State, 169 S.W.3d 673, 676 (Tex. App.—Fort Worth 2005, no pet.).  Officer
Dougherty’s testimony was not offered to show that appellant “burglarized a
woman’s apartment.”  The testimony established the investigation that linked
appellant to the apartment complex where the complainant’s vehicle was found. 
Eventually, this investigation led to appellant being a suspect in the current
case.  We agree with the trial court that this testimony was not offered to
prove the truth of the matter asserted and, therefore, is not hearsay.   See
id. at 675.    

            Accordingly, appellant’s fourth issue is
overruled.  

IV.      Improper Prosecutorial Argument

            In his fifth issue, appellant contends the
State improperly argued facts not in evidence, improperly bolstered the
credibility of the complainant, and improperly emphasized parole during closing
arguments in both the guilt/innocence stages and punishment stages of trial. 
Appellant concedes he did not object to any of these statements.

A.          Applicable
Law

The Court of Criminal Appeals has held a
defendant’s failure to object to a jury argument or a defendant’s failure to
pursue to an adverse ruling his objection to a jury argument forfeits his right
to complain about the argument on appeal.  Cockrell v. State, 933 S.W.2d
73, 89 (Tex. Crim. App. 1996).  The Court of Criminal Appeals has applied this
holding to closing arguments that allegedly violate the defendant’s due process
rights.  See Ladd v. State, 3 S.W.3d 547, 569–70 (Tex. Crim. App. 1999).

B.           Analysis

            Appellant admits he did not object to the
complained of arguments.  The record also confirms this.  In light of the Court
of Criminal Appeals’ holding in Cockrell, we hold appellant has
forfeited his right to complain of the improper closing arguments.  

            Accordingly, appellant’s fifth issue is
overruled.       

Conclusion

            Having overruled each of appellant’s issues, we
affirm the judgment of the trial court. 

 

 

                                                

                                                                        /s/        John
S. Anderson

                                                                                    Justice

 

 

 

Panel consists of Chief Justice Hedges and Justices
Anderson and Boyce.

Do Not Publish —
Tex. R. App. P. 47.2(b).